Good afternoon, Illinois Appellate Court First District. Court is now in session, the First Division, the Honorable Justice Carl Anthony Walker presiding, case number 1-9-2-4-5-0, First American Bank versus George Moser. Good afternoon, counsel. Good afternoon, everyone else. I'm Justice Walker, and I have serving with me today Justice Hyman and Justice Coughlin, and I'd like to have you all to introduce yourselves, lawyers. Good afternoon, Amy DeLeo, on behalf of the appellants, George A. Moser, George M. Moser, and Douglas Altenberger. Okay, thank you, Ms. Delano. And good afternoon, your honors, Eric Sparks, on behalf of First American Bank, the Appellee. Okay, good afternoon, Mr. Sparks. And how much time do you each need? We'll start with you, Ms. Delano. I would say 10 minutes, and then I would reserve five minutes for rebuttal. Okay, that's fine. And Mr. Sparks, how much time do you need? I anticipate only 10 minutes. 10 minutes? Okay, all right. Well, we generally do a lot more time, so if you need more time, we'll definitely grant that, especially if you run out of time, and the reason you've ran out of time is because the justices are still asking questions. And if you have an important point that you believe you should have brought to our attention and you did not, we'll give you time to do that, even if we tell you that you're out of time. So we're pretty liberal with granting additional time where it's absolutely needed. So with that, we will start with you, Ms. Delano. Thank you. May it please the court, this is an appeal from the order granting summary judgment in favor of the appellee, First American Bank, and against the appellants, George A. Moser, George M. Moser, and Douglas Altenberger, and also an appeal from the subsequent denial of the motion for reconsideration of that order. The case arises out of a loan transaction. A First American Bank. Where are the facts? I don't think you need to go through the facts. All right. So on August 6, 2019, the court granted summary judgment on the guarantees against the appellants. Let me ask you a question to get down to the issue. Uh, why does it matter with regard to the loan? What happened prior to the six modification? Because isn't it true that that six modification incorporates everything else? And all that's important is that six modification. That's a contract. That's the contract under consideration. I actually, I disagree with you. The loan documents, I, so the loan documents, the loan was originated in 2004. That was the time the guarantees were first signed, right? And the mortgage that the lender sought to foreclose on in this proceeding was signed. And all, all the loan documents prior to the six modification were in fact, you know, attached to the, you know, they included them in the verified complaint. So the loan documents don't just, didn't just start on, you know, July 17, 2017, when the six loan modification, but it does encompass all of the documents throughout the issue of why it's necessary because at the time of the six loan modification, if there was anything wrong, you know, there would have been brought up that because that if you just throw away everything to happen before that, what we have here before us is a six loan modification. That's what this case is about. The guarantees on that particular agreement. Actually, I think actually this goes to 191. All right. And in support of the motion for summary judgment, there was an affidavit of Ms. Perchinsky, which, you know, and she specifically testifies in that affidavit that her testimony as to the amounts due and owing are based on two documents, the loan history that is only from 2017 to 2019 and a loan balance statement. She does not attach. And if she was relying on a purported, and I disagree that there was an admission as to the amounts due and owing, but if she was relying on the six loan modification, that six loan modification should have been attached to the affidavit. Why? Why? Because 191 A says, if you are going to prove your case by summary judgment based on the documents and not by presenting a witness who can be cross examined that you must strictly comply with 191 A and you must, it says you shall attach copies of the documents on which you rely. She does not testify that the amounts due and owing are based upon the six loan modification. Well, she's not, but she's not, the six loan modification was in a verified complaint, right? We, the judge can take account of the verified document that was in the complaint. And that's just the contract. That's what it's collecting on is on the exhibits A and B that has to go with regard to what's due and owing and what was paid. Your honor, but we need to strictly comply with 191 and the six loan modification was not attached to the motion for summary judgment. But does it have to be, why would it have to be attached? That is not the relevant document for purposes of what she's testifying to. They're saying this whole case is based on that document, which is again verified. It's already been verified in the complaint. Isn't that what, if you attach it to the, it's a, that's a duplication of a document. It's not necessary for her testimony to have a copy. But she is saying, I, my not, she is saying her knowledge as of what was due and owing on July 17th, 2017 is based upon the six loan modification, which she improperly, because she references exhibit 14 and that's a notice of default. But I, and so she, she needs to strictly comply. So I think what I would like to point out here is defendants were just asking, they submitted a one 91 BS affidavit. They just wanted an opportunity to look at the full history of the loan, to verify that the documents and her testimony were correct, that they properly applied disbursements and properly applied payments. That's what she had. She attached that information. And in any event, you could have gotten that in discovery, which we submitted a one 91 B affidavit and she denied it. And instead said, well, no, it doesn't matter. You don't need to look at the loan history because you admitted. And, and I decided never in the motion did they say defendants admitted defendants, the guarantor, if you actually look at the six loan modification, the guarantors who the judgment is being entered against didn't admit it was borrower admitted to the Mount Stewart owing. It's not clear that a mission by the borrower would be binding on the guarantors. Why not? Why not? Because it's not, I mean, how, why, why opportunity to argue that because is there a legal basis for your, you said you, you know, you raised the issue. I'm saying, what is the legal basis for your argument? What is the legal basis? So if I had the 13 years of loan history, I could have seen, no, perhaps the 13 years of loan history would have shown that that $6.5 million figure was correct, but maybe I could have thought there was a discrepancy. We could have said, oh my gosh, you failed to disclose this to us. You, the, the sixth modification was, was procured by fraud. You should have disclosed that to us. We could have had a good faith and fair dealing. We just wanted an opportunity to see the loan history. It's, they had it within their possession. They've serviced the loan. They were, they attempted to file affirmative defenses and were denied leave to file the affirmative defenses. There are no affirmative defenses, but you didn't appeal it. No, we did not appeal that. So that's not an issue. No, the issue is whether we were entitled, whether I, and I believe here where a lender is seeking a multimillion dollar judgment against an individual guarantor and the guarantor submits a 191B affidavit saying I need to see the entire loan history. I think it's an error to deny that and to, you know, deny the motion to strike and enter summary judgment without giving defendants an opportunity just to review the loan history, to verify that the information that's contained in the summary judgment in the plea, in the papers that are being used to enter a multimillion dollar judgment against them are actually true and correct. And the basis for your argument is what cases those, the two cases you rely on? Yeah, I mean, I, I, which have to do with two cases, in both cases, the expert did not attach any documents. Right. And here, she is not, the sixth loan modification was not attached to the, to the affidavit. It's in the complaint. It's in the verified complaint, but other material that she did discuss in her affidavit was attached, correct? Right. But we're going to, she should have attached. So then we could look to verify that what she is testifying as the amounts to an owing actually match up to the documentation. And you have no case other than those two cases that say, there's no case that says what you want to, what you want in this case, other than those two cases you cite are very different situations. But other than that, you, you have no cases with regard to guarantors that 191 affidavits that would back your argument. I think that 191A backs my argument. My question is, do you have any other, is there any case law that supports you? Other than those two cases? Is there another case out there on these facts? No, where a lender hasn't attached 13 years of loan history. The other case that they, the question is why they have to, and you still haven't answered why they have to, because you were interested in, and again, there's discovery. There's other ways to get that information if you needed it, but isn't the law say that once you have a modified contract, that it's a new single contract and you only have to worry about that single country. Isn't that what the cases say? Schwindler versus Austin bank is one case. There's others. Uh, your honor, this is not the, as I said, the prior loan documents are relevant here and what the bank did from 2004, the date, the guarantees were entered. The loan is more than just the six loan modification. If we just look at the six loan modification, where's their mortgage, where's their guarantee? We look at the whole history of the loan and we may- Mr. Leo, are you aware of any cases that says that the loan modification or the contract is not required to be attached despite rule 191A? Maybe you didn't understand my question. That's okay. Did you understand it? If you did, you can answer it. No, no, your honor. Okay. You're not aware of anything. So you don't have any cases going in either direction, correct? Right. I've not found a case where a lender has not attached the full loan history. You're simply relying upon a Supreme court rule 191, correct? Correct. Okay. And that's, that's fine. If that's what you're relying on. Okay. You can continue. Well, let me, let me ask a question. If the guarantee, if the, excuse me, if the, um, uh, six loan modification says guarantors hereby confirm and reaffirm all of their obligations under the revised note and revised loan documents as modified and amended herein and confirm and reaffirm that the revised loan documents secure the revised note, wouldn't that be sufficient? Why would anything prior to six loan modification be necessary? If the guarantors have made that statement in the documents, a six loan modification. Well, they're reaffirming the obligations in the guarantee. So you would still look at the original guarantee and confirm and reaffirm all of their obligations under the revised note, which is in the, you know, the note and the revised loan documents as modified and amended. So they're reaffirming their allegation and they're reaffirming and confirming and reaffirming the documents secure the revised note, but to determine what their obligations are, which are, they were, it was a limited guarantee. You would still have to look back at the original guarantee. And it says, it says the revised note and the revised loan documents shall remain in full force and effect as originally executed and delivered by the parties, except as expressly modified and amended herein. I'm sorry. I'm just not understanding. They're saying they're, they're restated, but those documents still exist. How would to, to know what their obligations are? This isn't, this is saying, we're not spelling. They're not saying the whole, um, to know what their obligations are. You still need to look at the, the original guarantee and the revised guarantee. Now, was there a revised guarantee when they did the six loan modification? Uh, the revised guarantee was in 2009. So the original guarantee was in 2004. There was a revised guarantee in 2009. And the six loan modification simply referenced the 2009 guarantee, correct? Right. And did the guarantors agree to that six loan modification? Yes, they did. Okay. So your, your real issue here is that the six loan modification was never attached to the motion for summary judgment, correct? Yes. Okay. All right. And neither was the 2009 guarantee modification of the guarantee, correct? Right. And that, the 2017 was attached. That's your argument, correct? Yes. And the real issue here is proving the amount of damages due and owing on appeal. We're not, um, the real issue is we want to verify the amount to do that they claim are due and owing under the loan. Okay. We're not disputing the obligations, um, under the guarantee or what was in those prior documents, but we, what we are contesting, what she says is due and owing under the loan. And we wanted to see the history of the loan. And what reason did the trial court give you, uh, for denying your motion? The trial court said, uh, Oh, well in the six loan modification, you admitted these were due. I disagree with that. Um, and she said, you know, you would have looked at what's due and owing at the time you negotiated. And so you would have agreed to this. You would have known the figures then that's all conjecture that was not in the record. But the guarantors, the guarantors were a part of the negotiation for the six loan modification, correct? Well, the guarantors were agents of the borrower. Yeah, correct. So they participated in, and so the judge's reason is that, well, when the six loan modification was done, you, you, you agreed to everything that was owed and the bank agreed to do the modification based upon your agreement that this is what's owed now. And now we're going to modify the terms of the loan and here they are. And everybody signed off on the six loan modification. So, and I think that's where the issue comes to why, why was everything needed? If the six loan modification already addressed all of that. Now you may have a different argument when you say that the six loan modification was never attached to the motion for summary judgment pursuant to Supreme Court rule one 91. Right. That is my real contention here is it should have been attached if that's what they were going to rely on. Your position is because Supreme Court rule one 91 is not something that's that's permissive. It's mandatory that you, that it absolutely should be attached. And when it's not attached, the motion for summary judgment should not be granted until it is subsequently a new document is filed with that that's attached to the verified complaint, right? It is attached to the verified complaint. We admitted that they're true and correct copy, but you think that there, that, that it wasn't a true and correct copy. Do you dispute the contents of that exhibit to the verified complaint? I, I would dispute whether, and you make excellent arguments, but I just think that they're probably better suited to the time where the loan modification was completed. Not this stage of this case, because you're not disputing the substance of the loan modification. Are you? I am just listen to essentially hear the court saying I guess I'm disputing whether there was a judicial admission as that made by the guarantors in this case contained in the, in the sixth loan model, right? Because the sixth loan modification, it wasn't attached to the motion for summary judgment. So, you know, we couldn't respond to raise any challenge to say, well, you know, maybe one of the particular guarantors was more involved in the negotiations than the other. Perhaps, as I said before, you know, if we had the loan history, we may have seen some kind of error and perhaps we would have made, have had a defense to set aside that. History, I, I, I gathering at the time that the, that the, that the document was, the contract was entered into that the loan was modified. No, we wouldn't have seen the, the law, the, the, the original modification. The original, we would, we're talking about the bank's records as to history. We would have, yes, we would have known what payments, but I, I don't, I don't know that we had records. We have a one 91 B affidavit saying we don't, we didn't have the records prior to that date showing how, because there's not only payments. I mean, yes, they would know what payments were made, but they don't know how it was applied, how it was accounted for what disbursements were made by the lender. So it was sufficient for everyone to sign off on this modification. Your honor. I mean, we, there's a one 91 B affidavit in which Douglas Altenberger said he doesn't have sufficient information as of the date of the one 99 one B that as to an accounting prior to that date. So I based upon that affidavit, I would have to say, no, I'm assuming that the, you know, the day that he provided the one 91 affidavit, if he said, I lack information as to accountings and disbursements prior to July 17th, 2017, then he. Saying he didn't have it then. Is it correct that the six long modification was done in July of 2017? Yes. Okay. And that's where they start. Okay. So I think you, you may have a stronger argument because I'm trying to stay open-minded here, but you mentioned earlier that the affidavit was attempting to reference the six long modification, though it were not attached. And we, we understand that Supreme court rule one 91, a requires that it be attached, but it was referenced because it was attached to the original complaint. But it's my understanding based on an argument you made, and I'll check with counsel, whether or not this is correct, because I didn't notice this from the record that you're saying that the affidavit references exhibit number 14 in an effort to reference the modification, but in fact was referencing the notice of default. Is that correct? Correct. Yes. I think, I think the loan, the references exhibit 15, which is the default and the modification was at exhibit 14. And the, the, the affidavit references 15, believing that it's referencing the long modification. So in other words, the affidavit was, was, had a mistake in it, or it was not true for there's some problem with it is your point. We have to strictly comply. If you're not going to have a trial where witnesses on the stand, you need to strictly comply with one 91 a to assess that we have evidence and we have evidence that, you know, that is the veracity of the evidence and to be able to test the evidence. So if you're going to provide an affidavit, you need to strictly comply. We've heard that. So can you move on to your next argument? I'm sorry, justice. Is there anything on this issue? Cause I do want her to get to her other arguments. Are we good justices? Everybody's good on this argument. We understand what you're saying here. So let's move to your next argument. Yes. There was also an error in the, sort of the language of the August 6th, 2019 judgment order. It was a bit unusual in that they entered four separate judgment against each of the four guarantors and the way that it's worded, they just didn't include the joint and several liability language, which in there, you know, the police admits that there's only joint and several liability the way it's drafted. That's what they were asking for, right? That's what they, they asked for a judgment that provided for joint and several liability. Right. And it was, the language was not included in there. But then count, let me just be clear, but then counsel subsequently, cause it was a handwritten order. Counsel wrote the order, not the trial court and the trial court signed off on the order that provided for the four separate judgments. Is that correct? Right. Okay. So, and then when it was modified, do they have to do that under rule under the statute five dash five slash two dash four one O which says all parties to a joint obligation may be sued jointly or separate actions may be brought against one or more of them. Nothing here. And it's more than one satisfaction. That's the statute. Why would they have to do anything more? Well, because, because they entered it. Cause generally when I, no, no, no. I would enter one judgment against all four. That's the statute applies to the statute of place, right? You don't deny that that right. The statute applies and the statute says nothing here and permits more than one satisfaction. And you're worried, Oh, it's possible. There could be more than one satisfaction. No, the statute would prohibit that. And the statute also says all parties to a joint application may be sued jointly or separate actions may be brought against one or more of them. That's exactly, you know, that's what's happened here. And then, well, then subsequently the court modified the order to provide that plaintiff is only entitled to one satisfaction as to interest, but does not address the principle and the real estate taxes. So I think in attempting to clarify the order, the court kind of creates a suggestion. They can get multiple recoveries on the portion. That's the plaintiffs are going to violate the statute and one satisfaction. The statute says you can only get one satisfaction. The courts know you can only get one satisfaction. That's not good enough. Plaintiff has been very aggressive in their collection. That's not the question. That's not the question. I agree with you. I don't think the order, I have concerns that the order does not conform with the statute and thus it could create an issue subsequently in collection proceedings. Ms. Delano, the problem here is that satisfaction of what? The judgment was a $904,000 judgment against each separate individual. So if you're talking about satisfaction, you're talking about satisfaction of a judgment. Is that your concern? And therefore, so when you say satisfaction, well, satisfaction of what? Satisfaction of the judgment. But right in this case, there's four separate judgments entered. Right, right. And then there's the underlying obligation here. The, I mean, the statute doesn't refer to the underlying obligation. The statute says you can only get one satisfaction of the judgment. But in this case, there's four separate judgments. Right. So that, but you can only get one separate judgments technically, because of the trial courts modification only applies to the actual principle and to the real estate taxes. Because as far as the interest, the trial court made it clear that that can only be satisfied once. Right. And I think that it was not making clear for the other two. Right. The real estate taxes, the bank only paid one payment of $264,000 for real estate taxes. The bank should only be able to recover that once. They shouldn't be able to recover in post-judgment proceedings, you know, 200 times for $800,000. They should only, the bank's only entitled to one recovery. They don't get a windfall. One satisfaction. Right. They're only entitled to one satisfaction. One satisfaction. Correct. So, and then finally, with regard to the motion for reconsideration, we believe Judge Lyle erred in not granting consideration as we presented based on Judge Hunt's order in which Judge Hunt held not that the bank was entitled, not only that the bank was entitled to receive distributions under the tip note, but that the bank actually owned the tip note. And Judge Lyle should have, you know, indicated the August 6th order and allowed further evidence on whether the bank had properly applied the tip note to the underlying principle, to the obligation. Whether they, whether they apply it prior to the judgment or whether they apply it after the judgment, either way, you agree it has to be applied, right? Yes, but. So in other words, they can actually apply it We'll see if what council says about that as to whether or not they intend to. So that's going to be, it's in excess of $100,000 per year, I believe. Is that correct? Right. And the face value of the tip note is three and a half million dollars. Yeah, it was a little more than that, but okay. Yeah. Yeah. To your arguments, though, we don't have a record. We have no transcripts of what happened in the trial court. So we don't know what was discussed or what happened, despite your speculation in the, that we should speculate based on your, on your reply brief. That's what your argument is to me. Well, I think the, what the, the record shows what was presented to Judge Lyle and. And it doesn't tell us anything about what Judge Lyle said. Her order is contained in there. She denied it. I know. Do you have an evidentiary hearing? Does she have an evidentiary hearing on any of these issues? No. So we've got the record. No. Yeah. I'm not sure we need to, to, to have the transcript from a hearing if there was no hearing. We have the record. We have all the court's orders. So we have the information that we need to know what happened in the trial court. Is that what you're arguing? That is, that is my argument, Your Honor. Thanks. Yes. You can continue. Well, if, if there are any other questions, I think I've touched on the main points that I've and we are just asking this court to reverse the August 5th, 29th order, granting summary judgment, as well as reversing the November 5th, 2019 order denying the motion to reconsider. Thanks. Thank you. And Mr. Sparks, please, we need to hear from you. Thank you, Your Honor. Thank you, Justices. And may it please the court. Um, we, uh, we urge the court to affirm the trial court's ruling. Uh, the, I'll address the three arguments that are set for you. And clarify as much as you can for us, Mr. Sparks. Uh, we've heard Ms. DeLeo's arguments and, uh, she's making some great arguments. So I need you to clarify. Thank you, Justice Walker. Well, uh, first I'll address, uh, their initial argument, which is that, uh, they claim that the documents, uh, relating to the prior loan history before the sixth loan modification, somehow, uh, create a problem in connection with the summary judgment. Uh, it is not true, uh, as, uh, Justice Hyman noted under the Schwender case, the issue in connection with the guarantees here is simply payments that were made in connection with the, after the sixth loan modification. And the loan history after the sixth loan modification is attached to the affidavit of Ms. Prochensky. And the sixth loan modification, as I think we've heard opposing counsel mentioned, it was, as you'll see in the record, it was signed by the guarantors here and in their verified answer, they admit the sixth loan modification is attached to the affidavit. That is at A-12 in the, in the appendix. Right. But her more serious concern, I believe, is that the sixth loan modification was not attached to the motion pursuant to Supreme Court Rule 191A. And if you were to say, well, but it was referenced because it was in the affidavit. She's stating that the affidavit incorrectly references Exhibit 15, which is the notice of default rather than the loan modification, which was actually Exhibit 14. Is that all correct? It's true that there is a typo in the affidavit referencing which exhibit of the verified complaint is the sixth loan modification, but the verified complaint and all of its exhibits are incorporated by reference in the affidavit of Ms. Prochensky. And this is at, this is at A-38 in the appendix. If the notion that the, as the court knows the, on a summary judgment motion, what's before the court is the pleadings in the affidavits. And here, of course, the pleadings include the sixth loan modification. So the, to point out here, what's at issue in the case on the summary judgment motion is the amount due under the sixth loan modification after it became due. So the affidavit attaches the loan history documents from that date until the date of the summary judgment motion. And that's what established the amount due and owing under those guarantees as of that date. And of course, the defendants here did not oppose that summary judgment motion with any counter affidavits in connection with the loan history from the date of the sixth loan modification to the date of the hearing. In fact, at one point they stated they weren't going to respond to it, didn't they? Did I read that somewhere? No, they filed a response. They, what they stated in their motion to strike your honor is that they were not going to have a separate response. They were only filing the motion to strike. Okay. So they, okay. Yeah. That's a response, but okay. Right. There was not a separate response brief in the record. Now the, of course, the defendants, the appellants here argue in their reply, in their reply in the appellate brief that the, that they never admitted the amount due as of the sixth loan, according to the sixth loan modification. But that is inaccurate based on their answer, their verified answer to the verified complaint. It admits the sixth loan modification is attached to the verified complaint and in it, it says they deny any allegations inconsistent with the sixth loan modification with the terms of it. The terms of the sixth loan modification state the balance of the loan due, which is guaranteed by the guarantors under their revised guarantees in the sixth loan modification. It's ratified and affirmed in the sixth loan modification by the guarantors. So that's why there is no issue here. There's no defect in the summary judgment. There's no defect in the affidavit by the fact that the loan history prior to the sixth loan modification is not attached to the affidavit. Turning to the second argument that the appellants make, in this argument, they claim that there's an issue of, there's a risk of a quadruple recovery relating to the real estate taxes that are part of the judgment, the four separate judgments. There are only three judgments here at issue on this appeal. There were four separate counts under the separate guarantees at issue in the summary judgment motion. Each of those guarantors was sued individually under their individually signed guarantee. And there, as the court, as some of the justices have pointed out here, and I believe the opposing counsel mentioned, they're concerned about a risk of collection. The risk of collection is an issue to be raised in collection proceedings. As we cited to the for the real estate taxes here at issue. And the reason why there is only one satisfaction to be had, which can be obtained from any of these particular guarantors, is that each of their guarantees is responsible for any further advances that were made by the bank in connection with the part of the order that the trial court modified though on reconsideration was related to the interest. Is that correct? That's correct. And the trial court did not modify the order as it relates to the principal and the real estate taxes, correct? The court did not do that in the order. It was not requested. Okay. So when they went on their motion for me to reconsider, they only asked that the interest be corrected in terms of the order in the amount that could subsequently be collected. I want to point out to the justices here that there is no transcript from that hearing. And so I cannot, that's not, I didn't see you. You're trying to make this as Hyman's statement, and I don't need you to do that. I need you to answer my question. My question to you was what they asked for, and then you jumped to whether or not there was a transcript of the hearing. You know what was in there, or maybe you don't know what was in their motion. Maybe I should ask you, do you know what was in their motion? I do, Your Honor. I'd rather you answer my questions than to start making arguments. I'm asking you a question. It's a real simple question. If you don't know, just say, I don't know what was in their motion. Don't start making things up. Well, I didn't intend to, Your Honor. I don't know. I don't have that motion right in front of me, but I can find the reference in just a moment. And that's fine if you don't know. You don't have to answer the question. But counsel claims that they did ask that the entire order be modified. And the trial judge did modify a portion of the order to say that the interest could only be collected once. For what reason, if you agree that the statute provides that nothing else can be collected more than once, either the interest in real estate taxes or the principal, why is it, don't you believe the trial court should have modified the entire order to say that this entire order can only be collected once? I do not, Your Honor. I don't believe that there was any, I don't believe that the original summary judgments have any requirement to make this indication. It's an issue of, it's an issue of one satisfaction in collection. So there is no error in connection with the judgment. You know what? Many judges have done collection work in the past, and many judges know that what you're there to do is enforce the trial court's order. You're not going to review the trial court's order. You're not going to modify the trial court's order. You're there to enforce the trial court's order when an issue comes up on collection. So now my question to you again is, you're telling us that you agree that the principal can only be collected to the amount of the principal, about $904,000. Real estate taxes can only be collected up to the amount of the real estate taxes, I believe $264,000 or something to that effect. And that interest can only be collected up to the million dollars. You agree with that, correct? I agree with that in part, Your Honor. Which part do you not agree with? The part that I do not agree with is that the principal, the 10% of the principal, which is due for each of these guarantors under their guarantees, is potentially collectible from each of them, depending upon the total amount of the debt that has been collected at the time of collection under the guarantees. And that's because each of the guarantors... So just so we're clear, each guarantor is responsible for 10% of the principal? Under their guarantees, it's a cap of 10% of the principal can be collected from each of them. And 10% of the principal is $904,000? No, it's roughly $600,000. It's $600,000 and some thousand. Because the taxes was added to the $904,000 to get you to the $904,000. So it's about $668,000. That's correct. And $668,000 represents 10% of the principal. And your position is that each of the guarantors... Each is responsible for $668,000 of the total loan amount. Until the total loan amount is recovered. That's correct. If the total loan amount is recovered elsewhere in a different way, there are other collection efforts that are going forward at the same time as the guarantees. Yeah, I understand. So if 75% of the loan is still uncollected at the time you go after any particular guarantee or guarantor, that guarantor is still responsible for that guarantor's 10% of the principal amount. Correct? They are liable for 10% of the principal amount that was due at the time of default. So it's their total cap of what their principal liability is around $670,000. So the only modification that you believe... The only other modification that should have been made to the trial court's order is as to the real estate taxes, not as to the principal, because based upon what you're telling us here today, the amount of the principal is correct as to each individual. The 600... I don't have the exact amount in front of me right now, but it was about $668,000. Correct? That's correct, Your Honor. And the... But the amount of the taxes would be capped at the actual amount. Correct? The amount of the tax, the real estate tax advance can only be collected once in one satisfaction from any of the guarantors. So as soon as that amount is collected from in whatever combination, it can no longer be collected against any of the other guarantors. Right. But the trial court order doesn't state that as to the taxes, but it does make that clear as to the interest. Correct? That is correct. Okay. All right. So you concede with regard to this argument that with regard to the interest in taxes, you could only collect the total once. Correct? That is correct. And I... You concede that. I mean, that's... That is correct. That's our position in our reply brief. Yes. But you don't have... I'm sorry, our response brief, Your Honor. Right. Right. Yes. We just simply believe it's subject to the one satisfaction rule under the statute. Okay. And so is the... With regard to the 10%, although they each have separate judgments, again, you can't collect more than their separate judgments are together. On the principal amount, there's a chance that the full 10%, the 670,000 roughly, as against each guarantor, there's a chance that that full amount could be collected from each of those three guarantors that are subject to part of this appeal. That's possibility. It's depending upon how much of that total principal of the loan, which was at the time of default, 6,700,000 roughly, how much of that has been collected at the time that any of this ever gets collected from the guarantors. And you've already settled with Mr. Walsh, correct? There was a settlement with Mr. Walsh. Okay. And has money been received from the TIF fund already? There's a check from the TIF fund that is attached to the affidavit of Ms. Prochensky as part of the summary judgment motion. That was 100 something odd thousand dollars? You don't have to look for it if you don't remember. I recall it being around $200,000, Your Honor. But the total amount that could possibly be collected from the TIF fund is about 3.5 million. Is that correct? There is a maximum under that TIF note of, it's roughly 3 million something under the TIF note. That's what's on its face. It's a maximum under that TIF note. Of course, that TIF note is not the record of this appeal because the TIF note was never introduced by the appellants in the trial court. But we're clear, you've already settled with Mr. Walsh, and that may be an undisclosed settlement, so I won't ask you about it. That may be a confidential settlement. But if whatever amount you've collected from Mr. Walsh, that has no impact on the 10% that's still from the other three individuals, correct? Would that be your position? I don't believe that it does, Your Honor. Yeah, I agree with you. And then if you collect, just for instance, if you were to collect the 3.5 million from the TIF fund, there still would be about $3 million left on the loan. Is that correct? Yeah, that's correct. The total loan amount continues to incur interest after the date of these judgments that are at issue here on the guarantees. Correct, yeah. No, I mean, it has continued to incur interest on the loan itself. The Poplar Creek debtor filed for bankruptcy, that bankruptcy is pending, to my knowledge, and so that amount is still outstanding as to Poplar Creek, the debtor. And so, yeah, so the total amount due under that, yes, it was more than the amount due— It's still being incurred at the contract rate. That's right. Interest is being added at the contract rate, okay. And so, but still, the money collected from the TIF fund may or may not impact what's still due from these individuals, but at any rate, you still can't, you can't collect more than their 10%. That's right. Each of them can, they, each of them on their principal, it can only get $670,000 as to the, roughly as to the principal from each of those guarantors, and that can only be collected against each of them until the point that the total amount due under the loan is recovered on the principal amount under the loan. That's right. So, and to your point, as of the time of the summary judgment motion, the amount due is over $7 million in principal, and the, I mean, the face, the argument regarding the purported face value of the TIF note, which is not accurate, and I'll speak to that in a minute, but to your point, Justice Walker, even if you considered it, there's still $3 million due and owing of the principal, which here, there's $670,000 from three individuals. Which is no more than 2.8 million. Correct. It still doesn't, in other words, you believe, you believe they'll never be relieved of that 10%. That would be what you would suggest. That would be true. Because I don't want to place an opinion on any of this. I'm, that's why I'm asking you questions rather than saying what I think. No, I appreciate that, Your Honor. I, even if you took their argument to be true, which is not the case, it's not accurate to say that the face value of a TIF note should be credited towards the debt, even if you did, it wouldn't make a difference to these judgments that are at issue in this appeal. That's correct. It doesn't make a difference. But I'll also point out, as you can see from the pledge and security agreement, which we attached in paragraph seven of the pledge and security agreement, it references that under no circumstances will any monies be credited for the pledge of the TIF note, except as cash received by the bank. And so that is what's at issue, not the so-called face value of the TIF note, but only the cash actually received. Because the tax increment financing note is, there's just simply taxes that are gathered by the municipality, and then a check is given out based on how much taxes may have been collected that are covered under it. And as attached to the affidavit, there had been one check, it was roughly 200,000, and it was actually credited to the debt in the affidavit, and it's part of the motion for summary judgment itself. So here, there are no issues, even if you took their argument to be a legitimate one, it clearly does not create a fact issue that the judge would have to reconsider and change her ruling with respect to the motion for summary judgment. Okay, Mr. Sparks, you've done an excellent job responding to Ms. DeLeo's excellent arguments. Did you have anything else that's pressing that you need to say to us? Because I think you've addressed all of her arguments. I believe that is all. Thank you, Justice. Do the justices have any questions for Ms. DeLeo? The only point I wanted to clarify with regard to the TIF note, the Judge Hunt's order did create an issue of fact, because Judge Hunt didn't just find that the bank was entitled to receive distributions under the note, but that the bank was the owner of the note, that title essentially had transferred to the bank. Therefore, under the pledge and security agreement, the bank's own pledge and security agreement, which is also in the record, that note should be sold, and if they wanted a credit bid, the amount of their credit bid should be applied. But it does unpack the judgment because Judge Hunt's order said that the bank had owned that note since October of 2017. Therefore, it questions how much was due in owing under the loan obligation. And so it would affect what's 10% of the principal. What was the amount of interest due in owing? So it would affect the judgment amount. So that was, I just wanted to clarify that point on rebuttal. Anything further, Ms. DeLeo? No. No, Your Honor. Justices, any further questions for Ms. DeLeo or either of the lawyers? Okay, I think we're done. Thank you both for your excellent arguments and your excellent briefs. And we have a clear understanding of the issues, so we thank you for that. And have a good day.